

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GREGORY A. MOSEMAN and | § | Case No. 09-40914 |
| JACALYN MOSEMAN, | § | (Chapter 7) |
| | § | |
| Debtor. | § | |
| ——————————————————— | § | |
| | § | |
| TSCA-234 LIMITED PARTNERSHIP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 09-4077 |
| | § | |
| GREGORY A. MOSEMAN and | § | |
| JACALYN MOSEMAN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This matter is before the Court following a trial on the complaint filed by TSCA-234 Limited Partnership ("TSCA") against Gregory and Jacalyn Moseman. This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

In this adversary proceeding, TSCA argues that the Mosemans' exemption of one of their residential real properties as their homestead is grounds for denial of their discharge pursuant to 11 U.S.C. § 727(a)(2). TSCA also argues that alleged inaccuracies in the Mosemans' bankruptcy schedules are grounds for denial of their discharge pursuant to 11 U.S.C. § 727(a)(4)(A). After the trial, the Court took the matter under

1

advisement.  The Court concludes, for the reasons discussed below, that TSCA has failed to establish, by a preponderance of the evidence, grounds for denial of the Mosemans' discharge.

## I. BACKGROUND

The Mosemans reside in Allen, Texas.  For many years prior to bankruptcy, they owned two parcels of residential real property:  (i) a home located at 1218 Edgewood in Allen, Texas (the "Edgewood Property"); and (ii) a home located 1201 Rainforest Lane in Allen, Texas (the "Rainforest Property").   The Mosemans began living in the Edgewood Property, which they designated as their homestead under Texas law, in or around 1995.

The Mosemans bought the Rainforest Property out of a builder bankruptcy in or around 1993-1995.  The Rainforest Property was only partially finished at the time of purchase.  Gregory Moseman's father, a retired farmer, completed construction of the home.  Gregory Moseman's parents subsequently moved into the Rainforest Property and have lived in it continuously since that time.  Gregory Moseman has never required his parents to pay rent or property taxes.

Gregory Moseman has earned a masters degree in accounting and finance and a masters of business administration.  He was the only witness at trial.  The Court, having observed Gregory Moseman's demeanor and considered his testimony, as well as the other evidence presented at trial, finds his testimony to be highly credible.

Gregory Moseman began working for Lennox International, Inc. in February 2000.   He was the director of financial services for Lennox when he initiated the underlying bankruptcy case.  Lennox is involved in the heating, air conditioning, and

2

refrigeration markets.  Lennox operates in a number of countries through approximately 300-400 legal entities.

Early in his career at Lennox, Gregory Moseman was employed as the assistant treasurer.  His role as the assistant treasurer required him to hold officer positions in some of Lennox's subsidiary entities so that he could sign documents for those entities. Lennox controlled the process of naming officers for its subsidiary entities.  Gregory Moseman testified, credibly, that he does not know the names of the entities in which he might, technically, still hold an officer position.

In addition to his work for Lennox, Gregory Moseman was involved in his son's musical career.  Beginning in or around 1998 through early 2009, the Mosemans' son was a member of a five-piece rock band called Edgewater.  The five band members were limited partners in Edgewater Touring, Ltd. and Edgewater Band, Ltd.  The general partner for these limited partnerships was Edgewater Partners, L.L.C.  Gregory Moseman has a 5% ownership interest in Edgewood Partners, L.L.C.   In addition, Gregory Moseman served as the manager for the band, signing documents while the members were on tour.

In 2007, Gregory and Jacalyn Moseman ventured into the restaurant business by opening a grill and tavern called Mimosa Street.  Gregory Moseman's personal guaranty of the restaurant's lease is the source of TSCA's claim against him.  In particular, in June 2007, Edgewater Partners, L.L.C. entered into a lease (the "Lease") with TSCA in order to lease commercial space at 1310 W. Campbell Road, Suite 101, Richardson, Texas, where Mimosa Street would be located.  To secure the Lease, Gregory Moseman executed a guaranty (the "Guaranty").

3

Mimosa Street operated for a little more than a year.  By late 2008, it became clear that Mimosa Street was not as successful as the Mosemans had hoped it would be. Mimosa Street closed in October 2008.  Edgewater Partners, L.L.C. defaulted under the terms of the Lease in November 2008.

In addition to his problems with Mimosa Street, Gregory Moseman was faced with upheaval at Lennox.  Lennox hired a new chief executive officer in 2008, and he seemed to be systematically replacing upper management.  In August 2008, a former colleague and good friend approached Gregory Moseman with a lucrative job prospect. They began discussing the possibility that Gregory Moseman might take employment with an oil and gas company to assist in setting up an office in Dubai.  In October 2008, the company decided the new office would be located in Bermuda, not Dubai, and that Gregory Moseman would be expected to attend business meetings in Houston, Texas.

The Mosemans discussed the job prospect with Gregory Moseman's parents in October 2008.  The Mosemans anticipated that the new job would materialize in January or February 2009.  They hoped Gregory Moseman's parents would agree to handle their affairs after they moved to Bermuda.  Assuming the new job would materialize as expected, Gregory Moseman offered his parents a choice between living in the Edgewood Property or the Rainforest Property.  Not surprisingly, his parents chose to stay in the Rainforest Property.  The Mosemans anticipated that they would sell the Edgewater Property and stay with Gregory Moseman's parents while he was attending business meetings in Houston.

In December 2008, TSCA filed suit against Edgewater Partners, L.L.C. and Gregory Moseman for breach of the Lease and Guaranty in the 160th Judicial District

4

Court of Dallas County.  As a result of Edgewater Partners, L.L.C.'s breach of the Lease and Gregory Moseman's failure to pay under the Guaranty, TSCA claimed to have incurred a loss in the principal amount of $687,420.00.  The Mosemans had no way to satisfy these alleged damages.

When TSCA sued Gregory Moseman, the Mosemans were already in the process of moving into the Rainforest Property with Gregory Moseman's parents.  The Mosemans designated the Rainforest Property as their homestead in the county real estate records in December 2008.  Gregory Moseman understood that the homestead designation had property tax implications but did not understand the ramifications that his use of the Rainforest Property as his homestead might have for creditors.

Gregory Moseman testified, credibly, that the Edgewater Property was in need of significant repair.  The Mosemans did not have the funds to prepare the Edgewood Property for sale.  They hoped, instead, to rent the Edgewood Property.  One of their children moved into the Edgewood Property in the interim.

Unfortunately for the Mosemans, the new, lucrative position with the oil and gas company did not materialize as they had hoped.  The parent company suffered a serious decline in the value of its stock due to fluctuations in the market during the later part of 2008.  As a result, the oil and gas company instituted a hiring freeze.

On March 17, 2009, the state court granted default judgment in favor of TSCA with respect to its suit against Edgewater Partners, L.L.C.  Before the state court could reach a similar judgment in connection with TSCA's suit against Gregory Moseman, on March 30, 2009, the Mosemans filed their petition for Chapter 7 relief under the Code.

The Mosemans were current on their debts, including significant credit card debts, at the time they filed their petition.

The Mosemans filed their Schedules A – J (Official Form 6) and Statement of Financial Affairs (Official Form 7) at the same time as their petition.  They disclosed their ownership interest in the Edgewater and Rainforest Properties (Schedule A – Real Property), and they claimed their interest in the Rainforest Property as their exempt homestead under Texas law (Schedule C – Property Claimed as Exempt).[1]  They disclosed Gregory Moseman's employment as director of financial services for Lennox (Schedule I - Current Income of Individual Debtor(s)).  In their original Statement of Financial Affairs, they disclosed that they had been officers, directors, or partners in Edgewood Partners, L.L.C., Forevergreen Records (a music production company), and Forevergreen Management (a music management company).

Gregory Moseman testified at the meeting of creditors held on May 1, 2009, pursuant to § 341 of the Code.  At some point prior to or after this meeting, TSCA learned that Lennox had named Gregory Moseman as an officer of some of its subsidiaries.  TSCA filed its adversary complaint on June 30, 2009, claiming, among other things, that Gregory Moseman should have disclosed all of the subsidiaries of Lennox in which he had been designated an officer within six years of bankruptcy in his Statement of Financial Affairs.[2]  Gregory Moseman subsequently amended his Statement

---

[1] Under Texas law, debtors may exempt the total value of a designated "homestead" from their bankruptcy estate.  *See* TEX. CONST. art. XVI, § 50; TEX. PROP. CODE ANN. §§ 41.001 - 41.002.

[2] The Statement of Financial Affairs, Question No. 18a, requests the following information: "If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately

of Financial Affairs in an attempt to respond to this alleged lapse by attaching a 9-page list of all the subsidiaries in which Lennox might, possibly, have named him as an officer. Although the Mosemans had already disclosed their interest in Edgewater Partners, L.L.C., the Mosemans also amended their Statement of Financial Affairs to list the two companies for which Edgewater Partners L.L.C. served as general partner – Edgewater Touring, Ltd. and Edgewater Band, Ltd. – in response to TSCA's allegations that their schedules were incomplete.

At trial, TSCA argued that the 9-page list of Lennox-owned companies should have been attached to the Mosemans' original Statement of Financial Affairs. TSCA also argued that the Mosemans' schedules, as amended, omit "assets" such as their homeowners, health care, and car insurance policies.[3] In addition, TSCA argued at trial that the Mosemans should have disclosed to the Chapter 7 trustee a post-petition severance payment that Gregory Moseman received when Lennox terminated his employment in December 2009.

The Mosemans' primary offense, according to TSCA, relates to their designation of the Rainforest Property as their homestead. In TSCA's preferred world, the Mosemans should have stayed in the Edgewater Property. (The Mosemans had no equity in the Edgewater Property.) They should have allowed TSCA to obtain a judgment lien against the Rainforest Property in which, according to TSCA, the Mosemans had some

---

preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case."

[3] Schedule B – Personal Property, Question No. 9, instructs debtors to list the following property: "Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each."

equity.[4]  They then should have waited for TSCA to evict Gregory Moseman's elderly, retired parents before filing for bankruptcy.  Instead, the Mosemans had the audacity to downsize by moving into the Rainforest Property with Gregory Moseman's parents and file for bankruptcy before TSCA had obtained a judgment against Gregory Moseman.

The Mosemans claimed the Rainforest Property as exempt from their creditors under Texas law in their bankruptcy schedules.  TSCA objected to their claimed exemption of the Rainforest Property, among other things.  TSCA subsequently initiated this adversary proceeding and withdrew its objection to the Mosemans' claimed exemptions.  Accordingly, the Mosemans' exemption in the Rainforest Property has been automatically sustained by operation of law.

In December 2009, approximately nine months after filing for bankruptcy, Gregory Moseman's concerns about his job at Lennox proved to be true.  Lennox terminated his employment, and he received a severance payment of $25,000.  Gregory Moseman testified that he informed his bankruptcy attorney of the severance payment but did not know whether the Chapter 7 trustee was made aware of it.  TSCA first learned of the severance payment at trial.  There is no evidence that Gregory Moseman had any contractual right to or expectation of a severance payment when the Mosemans filed their Chapter 7 bankruptcy petition in March 2009.

---

[4] The Mosemans listed the market value of the Rainforest Property at $195,000 in their Schedule A – Real Property, and they stated that the amount of the outstanding mortgage was $105,553.72.  TSCA argued at trial that the Mosemans should have used the higher value assessed by the Collin County Appraisal District for the Rainforest Property.  However, the Mosemans had protested the taxing authority's valuation of the Edgewood and Rainforest Properties.  Moreover, TSCA failed to provide this Court with evidence contradicting the Mosemans' valuation of the Edgewood and Rainforest Properties.

## II. DISCUSSION

Section 727 of the Bankruptcy Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in paragraphs (1) through (12) of § 727(a) is proven to exist. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See Friendly Fin. Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452 (5th Cir. 1974). Further, under Federal Rule of Bankruptcy Procedure 4005, the burden of proof is on the party objecting to the discharge.

### A. 11 U.S.C. § 727(a)(2)(A)

Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets. This provision states in pertinent part:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed (A) property of the debtor within one year before the date of the filing of the petition; or (B) property of the estate, after the filing of the petition.

11 U.S.C. § 727(a)(2). Therefore, to establish that the Court should deny the Mosemans a discharge pursuant to § 727(a)(2)(A), TSCA must show the following four elements: "(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005).

TSCA argues that the Mosemans' designation of the Rainforest Property as their homestead was a conversion of non-exempt property into exempt property done with the

intent to defraud TSCA and the Mosemans' other creditors.  The Mosemans respond that

TSCA has not established all of the elements required for its § 727(a)(2)(A) claim.  The

Mosemans dispute that the designation and exemption of the Rainforest Property as their

homestead constituted a transfer of property.  Alternatively, if a transfer of property did

occur pre- or post-petition, the Mosemans dispute that the transfer was done with intent

to defraud.

> *1. Moving Into a Home Does Not Constitute a Transfer of Property or an Interest in Property*

Turning to the first two elements of TSCA's § 727(a)(2)(A) claim, TSCA must

establish that the Mosemans transferred property or an interest in property belonging to

them.[5]  The Code defines a transfer as "each mode, direct or indirect, absolute or

conditional, voluntary or involuntary, of disposing of or parting with: (i) property; or (ii)

an interest in property."  11 U.S.C. § 101(54)(D).  However, "to effect a transfer there

must be 'property' or an 'interest in property.'"  *Laughlin v. Nouveau Body and Tan,*

*L.L.C., et al. (In re Laughlin),* 602 F.3d 417, 426 (5th Cir. 2010).  "The Supreme Court

has repeatedly held that '[p]roperty interests are created and defined by state law' in the

absence of a controlling federal interest."  *Id.* (quoting *Butner v. United States*, 440 U.S.

48, 55 (1979)).

TSCA argues that the first two elements of § 727(a)(2)(A) are satisfied by the

Mosemans' designation of the Rainforest Property as their homestead only four months

prior to bankruptcy.  TSCA argues that, by designating the Rainforest Property as their

homestead in the real property records, the Mosemans removed the equity in the home

---

[5] In its trial brief, TSCA asserts that its claim is not limited to an alleged "transfer" of the
Mosemans' equity in the Rainforest Property.  TSCA argues that the Mosemans violated § 727(a)(2)(A) by
"removing" or "concealing" the equity from the reach of their creditors.  The removal or concealment of
property, however, falls within the broader definition of a "transfer."

from the reach of TSCA and other creditors.  TSCA points the Court to cases in which debtors enlarged their exemptions by converting non-exempt property into exempt property on the eve of bankruptcy.  In *First Tex. Savs. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986 (5th Cir. 1983), for example, the debtor sold his personal assets (*e.g.*, antiques, a gun collection, stock).  He used the proceeds to reduce the mortgage on his home, which was exempt from his creditors, prior to filing for bankruptcy.  TSCA argues that the pre-petition designation of the Rainforest Property as the Mosemans' homestead and the post-petition exemption of the Rainforest Property by the Mosemans was a similar conversion of property.

In contrast to *Reed*, however, the Mosemans did not sell or otherwise dispose of non-exempt property and use the proceeds to maximize their homestead exemption.  The Mosemans simply moved into a home they already owned.  By moving into the Rainforest Property, the Mosemans abandoned their homestead interest in the Edgewood Property as a matter of law.  *See Garrard v. Henderson,* 209 S.W.2d 225, 229 (Tex. Civ. App. – Dallas 1948, no writ).  Texas law provided them with a homestead interest in the Rainforest Property because they showed overt acts of homestead usage, *id.* at 230, not because they designated the Rainforest Property as their homestead in the real property records for tax purposes.  *See, e.g., Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591 (Tex. App. – Dallas 2009) (holding that homeowner's failure to file a property tax exemption was not proof that she did not intend to treat the property as her homestead).

Nonetheless, TSCA argues that a homestead interest is a property right under Texas law, *see Crews v. Gen. Crude Oil Co.*, 287 S.W.2d 243, 249 (Tex. Civ. App. – Beaumont 1955, no writ), that may be transferred by designating a new home as the

11

homestead.  While the case cited by TSCA does describe a homestead interest as a "right," the Fifth Circuit has recently cautioned that courts must look beyond such labels. *See Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 224 (5th Cir. 2008).[6]  The Fifth Circuit explained in *Rogers* that a debtor does not acquire title or equity in a home simply by claiming it as his homestead under Texas law.  *Id.* at 222.  Rather, "[u]nder Texas law, '[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads.  This interest . . . gives protective legal security rather than vested economic rights.'"  *In re Rogers*, 513 F.3d at 224 (quoting *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992)).[7]

The issue in *Rogers*, similar to the issue in this case, was whether the debtor acquired an "interest" in property by moving into a home she already owned and claiming it as her exempt homestead.  The Fifth Circuit concluded that she had not and, therefore, her claimed exemption was not limited by § 522(p)(1).  The Fifth Circuit held in *Rogers* that a "homestead interest" is not the sort of "vested economic interest … that

---

[6] Although *Rogers* addressed whether a homestead interest is an "interest" within the meaning of § 522(p)(1), not § 727(a)(2), the Fifth Circuit's analysis of the Texas homestead exemption is instructive and persuasive.  The Court rejects TSCA's argument that it should ignore the Fifth Circuit's analysis in *Rogers* simply because that analysis occurred in the context of a Code provision that is not at issue in this proceeding.  Construction of the Code is a holistic endeavor.  *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371 (1988).  In construing any provision of the Code, the Court must consider the particular statutory language, the design of the Code as a whole, and its object and policy.  *See Kelly v. Robinson,* 479 U.S. 36, 43 (1986).  "Provisions of the [Code] cannot be read in isolation but should be interpreted in light of the remainder of the statutory scheme."  *Sun Finance Co., Inc. v. Howard (In the Matter of Howard),* 972 F.2d 639, 640 (5th Cir. 1992).

[7] In *Rogers*, the Chapter 7 debtor inherited real property more than 1,215 days prior to bankruptcy but did not begin to occupy the real property as her homestead until a time within the 1,215-day "lookback" period.  Section 522(p)(1) prevents a debtor from exempting certain "interests" in real or personal property from the bankruptcy estate if they were acquired by the debtor during the 1,215-day statutory period and the aggregate value exceeds a certain threshold.  The debtor claimed the property where she was living as exempt, and a judgment creditor objected on the grounds that the debtor had acquired a "homestead interest" during the lookback period.

can be acquired" by a debtor. *Id.* "[O]ne has 'interests' in the property itself, not in the exemption that protects those interests." *Id.* at 225. "The homestead interest simply gives 'protective legal security' to those vested economic interests in property that were acquired by the debtor before the filing of the petition." *Id.* (citing authority). Likewise, in the bankruptcy context, "[t]he homestead exemption and the property interest impressed with that exemption are discrete concepts:  the former is the debtor's legal right to exempt certain property interests from the bankruptcy estate, the latter is the debtor's vested economic interests in the property itself." *Id.*

In this case, the Mosemans have owned the Rainforest Property for many years. They did not actively increase their equity in the Rainforest Property prior to bankruptcy. Moving into the Rainforest Property created a homestead interest through the operation of Texas law;  however, a homestead interest is not the sort of vested economic interest in property that could be or was transferred by the Mosemans from the Edgewood Property to the Rainforest Property.  The Court, therefore, concludes that TSCA has failed to establish that the Mosemans transferred "property" or "an interest in property" within the purview of § 727(a)(2)(A).  *See also, e.g., Panuska v. Johnson (In re Johnson),* 880 F.2d 78, 82-83 (8th Cir. 1989) (reaffirming "the rule that conduct sufficient to defeat discharge requires indicia of fraud beyond mere use of the exemptions"); *Garcia v. Garcia (In re Garcia)*, 168 B.R. 403, 407 (D. Ariz. 1994) ("Merely claiming a homestead exemption, however, is not a transfer falling within the purview of section 727(a)(2)(A).").

### 2. The Mosemans Did Not Intend to Defraud Creditors

Assuming for the sake of argument that the act of moving from one house to another is a transfer of property for purposes of § 727(a)(2)(A), the Mosemans' decision

to move into the Rainforest Property, even if it had the effect of maximizing exemptions in bankruptcy, was not necessarily fraudulent.  It is generally recognized that a debtor may convert non-exempt property to exempt property in order to maximize exemptions on the eve of bankruptcy.  Both the House and Senate Reports validate this approach by stating the following:

> As under current law, the Debtor will be permitted to convert non-exempt property into exempt property before filing a Bankruptcy petition. Such practice is not fraudulent as to the creditor and permits the Debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. 95-595, 95th Cong., 1st Sess. 361 (1977); S.Rep. 95-989, 95th Cong., 2nd Sess. 76 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5862, 6317.  It is also recognized, however, that a conversion of non-exempt property into exempt property with specific intent to defraud creditors may provide a basis for denying a discharge under § 727(a)(2)(A) of the Code.  *See, e.g., In re Reed*, 700 F.2d at 991.

Intent to defraud must be actual, not constructive, in order to deny a discharge under § 727(a)(2)(A).  *See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989).  Actual intent can be established by circumstantial evidence or by inferences that can be drawn from a course of conduct.  *Id*.  The Fifth Circuit has identified the following factors that may provide evidence of actual intent to defraud: (i) a lack or inadequacy of consideration, (ii) a familial or close relationship between the parties, (iii) retention of possession, benefit, or use of the property in question, (iv) the financial condition of the party sought to be charged both before and after the transaction in question, (v) the existence or cumulative effect of a pattern or course of conduct after the incurring of a debt, onset of financial difficulties or threat of suits by creditors, and (vi) the general chronology of the events and transactions at issue.  *Id*.

14

Here, TSCA assumes bad intent and looks to the timing of the events leading up to bankruptcy to prove it.  The circumstances do not compel such a finding.  Indeed, the Court finds that the Mosemans lacked any intent to hinder, delay or defraud their creditors.  The Mosemans opened a restaurant that failed.  Gregory Moseman, at that time, was concerned about his job at Lennox and was hoping to start a new job in a few months.  The Mosemans were in the process of moving into the Rainforest Property to live with Gregory Moseman's parents when TSCA sued Gregory Moseman on his personal guaranty of the Lease.  They first consulted a bankruptcy attorney at or around the time that TSCA filed suit.  Several months later, faced with the possibility of a large, personal obligation that he could not pay, Gregory Moseman elected to file for bankruptcy protection.

The Mosemans initiated the underlying bankruptcy case as a way to deal with their legal and financial problems.  The fact that creditors, including TSCA, will not be paid in full does not make their bankruptcy filing fraudulent or illegitimate.  Gregory Moseman testified, credibly, that their reasons for moving into the Rainforest Property were unrelated to TSCA.  The Mosemans were not scheming to defraud TSCA or anyone else, but were simply downsizing in preparation for the new job they hoped Gregory Moseman would begin in a few months.

For all of the foregoing reasons, the Court concludes that TSCA has failed to establish, by a preponderance of the evidence, grounds for the denial of the Mosemans' discharge under § 727(a)(2)(A) of the Bankruptcy Code.

**B. 11 U.S.C. § 727(a)(4)**

The Code conditions a debtor's discharge on truthfulness. Section 727(a)(4) provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail on a claim under this subsection, an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence "that (1) the debtor made a ... statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Sholdra v. Chilmark Fin. LLP* (*In re Sholdra*), 249 F.3d 380, 382 (5th Cir. 2001) (citing *Beaubouef v. Beaubouef* (*In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992)). False oaths sufficient to justify a denial of discharge include a false statement or omission in the debtor's schedules.[8] *In re Beaubouf*, 966 F.2d 177-78. Circumstantial evidence may be used to prove fraudulent intent, *In re Sholdra*, 249 F.3d at 382*,* and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent, *see id.* at 383.

Here, TSCA argues that the cumulative misstatements in the Mosemans' bankruptcy schedules and Statement of Financial Affairs establish their fraudulent intent. These alleged misstatements do not follow any particular pattern. TSCA alleges that the Mosemans' original Statement of Financial Affairs was false, because they failed to list the limited partnerships in which Edgewood Partners, L.L.C. served as a general partner.

---

[8] Bankruptcy Rule 1008 provides that "[a]ll petitions, lists, schedules, statements of financial affairs, [etc.] shall be verified or contain an unsworn declaration as provide in 28 U.S.C. § 1746." *See* FED. R. BANKR. P. 1008.

TSCA alleges that the Mosemans' original Statement of Financial Affairs was false, because they failed to list all the subsidiaries of Lennox in which Gregory Moseman holds or might have held an officer position. TSCA also complains that the Mosemans' bankruptcy schedules are false, because they undervalued the Rainforest Property and should have listed their car and health insurance policies as assets of their estate.

*1. The Bankruptcy Schedules Do Not Contain False Statements*

First, TSCA complains that the Mosemans did not list car insurance, health insurance, and similar insurance policies in their original or amended bankruptcy schedules. There is no dispute that none of these "missing" policies have any residual value. Since these policies had no residual value, the Mosemans were not required to list them in their bankruptcy schedules. Indeed, this Court does not recall ever seeing such policies listed in a consumer's bankruptcy schedules. The case upon which TSCA relies, *Cadle Co. v Mitchell (In re Mitchell)*, 102 Fed. Appx. 860 (5th Cir. 2004), involved a life insurance policy with a residual cash value.

TSCA also argues that the Mosemans' schedules were false because they failed to disclose their alleged partnership interest in Edgewater Touring, Ltd. and Edgewater Band, Ltd. in their original bankruptcy schedules. This argument is based on the false premise that such a disclosure was required. Gregory Moseman testified, credibly, that he was not a general or limited partner in these entities. The Mosemans accurately disclosed their 5% interest in Edgewood Partners, L.L.C., which is the general partner of Edgewater Touring, Ltd. and Edgewater Band, Ltd. TSCA failed to provide this Court with any authority requiring the Mosemans to include limited partnerships in which they had no financial or ownership interest in their bankruptcy schedules or Statement of

17

Financial Affairs.  To the contrary, if the Mosemans had listed two limited partnerships in which they had no interest, their statements and schedules arguably would have been false and misleading.

### 2. The Statement of Financial Affairs Does Not Contain False Statements

With respect to the Mosemans' Statement of Financial Affairs, TSCA complains that the Mosemans failed to disclose that Gregory Moseman might be an officer of various subsidiaries of Lennox in their original bankruptcy schedules.  Gregory Moseman listed his employment as director of financial services for Lennox, and he does not dispute that Lennox named him as an officer of some of its subsidiaries so that he could sign documents for those entities.  Gregory Moseman had no personal stake in the subsidiaries or affiliates of Lennox.  Rather, as previously discussed, he became an officer in some of Lennox's subsidiaries as part of his employment with Lennox, and he disclosed his employment by Lennox in his bankruptcy schedules.

The Court finds that Gregory Moseman's disclosure of his employment as director of financial services at Lennox was sufficient based on the apparent identity of interest among Lennox and its subsidiaries.  The fact that the Mosemans amended their Statement of Financial Affairs in a futile attempt to placate TSCA is not evidence that their original Statement of Financial Affairs was false or deceptive.[9]  Further, their initial failure to disclose that Lennox might have named Gregory Moseman as an officer of one or more of its subsidiaries within six years of bankruptcy was immaterial to the Mosemans' bankruptcy case.  The fact that Gregory Moseman's employment with

---

[9] A debtor may amend his bankruptcy schedules and statements at any time prior to the closing of the bankruptcy case.  *See* FED. R. BANKR. P. 1009(a).  Bad faith requires something more than a mistaken failure to list an asset or to claim an exemption.  *See McFatter v. Cage*, 204 B.R. 503 (S.D.Tex. 1996) (discussing Fifth Circuit authority).

18

Lennox required him to hold a position as an officer of a subsidiary of Lennox does not relate to the Mosemans' business transactions, the discovery of assets, business dealings, or the existence of estate property. *In re Beaubouef,* 966 F.2d at 177. Likewise, to the extent TSCA claims that the Mosemans' schedules are false because they failed to fully disclose Gregory Moseman's role in his son's musical career, TSCA failed to show that Gregory Moseman's pre-bankruptcy management of his son's defunct band is material to this bankruptcy case.

### 3. The Mosemans Were Not Required to Disclose the Post-Petition Severance Payment to the Chapter 7 Trustee

Finally, TSCA argues that the Court should deny a discharge to the Mosemans because they failed to disclose a $25,000 post-petition severance payment to the Chapter 7 trustee. Gregory Moseman received this payment more than nine months after filing for bankruptcy. Nonetheless, TSCA argues that the severance payment was property of the bankruptcy estate and, as such, should have been disclosed to the Chapter 7 trustee.

In support of its argument, TSCA relies upon cases in which a debtor has a contingent right to a bonus or severance payment on the petition date. TSCA appears to understand these cases as standing for the proposition that *any* post-petition severance payment received from a pre-petition employer is property of the estate. This is not the law. In Chapter 7, the estate includes only the debtor's property interests as of the petition date. *See* 11 U.S.C. § 541(a)(1). Post-petition earnings are never property of the estate in Chapter 7 cases. *See, e.g., Burgess v. Sikes (In re Burgess)*, 438 F.3d 493 (5th Cir. 2006) (holding that post-petition payment for pre-petition crop loss, which had been authorized by post-petition legislation, was not estate property). With respect whether a right to receive a severance payment is property of the Chapter 7 estate, "the nearly

unanimous view of the other courts that a contingent interest is property of the estate if sufficiently rooted in the debtor's prepetition past." *Booth v. Vaughan (In re Booth)*, 260 B.R. 281, 289 (B.A.P. 6th Cir. 2001).

Here, Lennox terminated Gregory Moseman's employment post-petition.  He received the severance payment as a consequence of Lennox's post-petition decision. Gregory Moseman did not have a contingent right to a severance payment under a pre-petition employment contract, and Lennox did not offer the severance payment to him until long after he had filed for bankruptcy.  The Court, therefore, concludes that Gregory Moseman's receipt of the $25,000 severance payment, assuming it was not disclosed to the Chapter 7 trustee, is not grounds for the denial of the Mosemans' discharge. *Compare Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423 (9th Cir. 1993) (holding that post-petition severance payment made to Chapter 7 debtor based on a pre-petition contract was property of the bankruptcy estate), *with Hoffman v. Bruneau* (*In re Bruneau*), 148 B.R. 4 (Bankr. D. Conn. 1992) (concluding that a post-petition severance payment was not estate property where debtor elected to participate in a severance program post-petition).

### 4. The Mosemans Did Not Have Fraudulent Intent

Fraudulent intent may be established by showing either actual intent to deceive or a reckless indifference for the truth.  *In re Sholdra,* 249 F.3d at 382.  In this case, as previously discussed, TSCA argues that the Mosemans were recklessly indifferent to the truth as evidenced by all of the misstatements in and omissions from their bankruptcy schedules and statements.  The Court, however, concludes that the Mosemans were not indifferent to the truth.  Their schedules did not omit valuable assets, such as insurance

policies with residual cash value, and they amended their Statement of Financial Affairs to list all of the companies in which Lennox might have named Gregory Moseman as an officer as well as the limited partnerships in which Edgewood Partners, L.L.C. served as a general partner.  If the Mosemans made any mistakes in their schedules and statements – and the Court does not find that they have – the mistakes were honest, and they took advantage of the opportunity to clear up any omissions.  *See In re Beaubouef,* 966 F.2d at 178 (discussing the impact of honest mistakes).

For the foregoing reasons, the Court concludes that TSCA has failed to establish, by a preponderance of the evidence, grounds for the denial of the Mosemans' discharge under § 727(a)(4) of the Bankruptcy Code.

## III. CONCLUSION

In summary, TSCA failed to carry its burden under §§ 727(a)(2)(A) and (a)(4). TSCA failed to establish, by a preponderance of the evidence, that (i) the Mosemans transferred an interest in the Rainforest Property with intent to hinder, delay or defraud; or (ii) the Mosemans made any knowing and fraudulent statements with respect to any material matter herein.  The Court will enter a separate Judgment consistent with this Memorandum Opinion.

Signed on 7/15/2010

*Brenda T. Rhoades*                    SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE